UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

--------------------------------x
SUCCESS VILLAGE APARTMENTS, INC.,  :
                                   :
        Plaintiff,                 :
                                   :
    v.                             : Civ. No. 3:03CV01337(AWT)
                                   :
AMALGAMATED LOCAL 376, UNITED      :
AUTOMOBILE, AEROSPACE &            :
AGRICULTURAL IMPLEMENT WORKERS OF  :
AMERICA (UAW) and INTERNATIONAL    :
UNION, UNITED AUTOMOBILE,          :
AEROSPACE & AGRICULTURAL IMPLEMENT :
WORKERS OF AMERICA (UAW) AFL-CIO,  :
                                   :
        Defendants.                :
--------------------------------x

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Success Village Apartments, Inc. (the "Plaintiff") brings
this action seeking to vacate two arbitration awards entered in
favor of Amalgamated Local 376, United Automobile, Aerospace &
Agricultural Implement Workers of America (UAW) and International
Union, United Automobile, Aerospace & Agricultural Implement
Workers of America (UAW) AFL-CIO (collectively, the
"Defendants").  Both sides have filed motions for summary
judgment, and for the reasons set forth below the Defendants'
motion is being granted.

## I.   Factual Background

The Plaintiff operates a private, resident-owned housing
complex located on the Stratford/Bridgeport line.  Employees of
the Plaintiff are represented by the Defendants for purposes of

collective bargaining.  At all relevant times the Plaintiff and the Defendants were parties to a collective bargaining agreement that was effective by its terms for the period from June 1, 1999 through May 31, 2002 ("the Collective Bargaining Agreement").

Article 10 of the Collective Bargaining Agreement sets forth the procedure governing grievances.  A grievance is defined as "a difference of opinion between the Co-op and the Union or an employee involving the interpretation or application of the terms of this Agreement."  Collective Bargaining Agreement, art. 10, sec. 2.  Section 3 of Article 10 provides for the following procedure:

> Section 3.    All grievances that may arise between the Union and/or an employee and the Co-op shall be processed in the following manner.
> Step 1 - The aggrieved employee and the Steward shall discuss the grievance orally with the Manager within ten (10) days after the Union and/or the employee became aware of the circumstances that gave rise to the grievance.
> Step 2 - Grievances not settled through discussion at Step 1 will be reduced to writing, indicating the Article and Section of the Agreement alleged to have been violated, and presented to the Manager within five (5) working days after the discussion at Step 1.  The Manager will respond to the grievance, in writing, within five (5) working days after receipt of the written grievance.
> Step 3 - In the event that the grievance is not settled at Step 2, the grievance will be referred to the Grievance Committee, who with the Local Union President and/or the local Union Business Agent and an International Representative, will take up the matter with the representative designated by the Co-op's Board of Directors within five (5) working days after receipt of the Manager's written response at Step 2.  The Co-op will respond, in writing, to the grievance within five (5) working days after the meeting.

2

Step 4 - In the event that the grievance is not
settled at Step 3, the Union may refer the grievance to
final and binding arbitration by filing with the
Connecticut State Board of Mediation and Arbitration
withing thirty (30) days after receipt of the Co-op's
response at Step 3.  The arbitrator(s) shall hear only
one grievance at a time.  The parties shall share the
expenses of the arbitration.  The arbitrator(s) shall be
confined in the decision to be rendered to the
interpretation or application of the terms of this
Agreement and shall have no power to add to, subtract
from or modify this Agreement.  The arbitrators shall not
be empowered to grant a remedy which is retroactive more
than ten (10) days prior to the meeting at Step 1 above.

Collective Bargaining Agreement, art. 10, sec. 3.

On March 8, 2002, Cecele Johnson, an employee of the

Plaintiff employed in the bargaining unit represented by the

Defendants, filed a grievance identified as CSBMA Case No. 2002-

A-0873.  On March 10, 2002, Antonio Teja, Jr., an employee of the

Plaintiff employed in the bargaining unit represented by the

Defendants, filed a grievance identified as CSBMA Case No. 2002-

A-0874.  The Plaintiff denied each grievance at Step 2 of the

grievance procedure.

The Defendants submitted both disputes to Step 3 of the

grievance procedure.  No Step 3 meeting was held due to an

ongoing disagreement between the parties over how many

representatives of the Plaintiff could attend Step 3 meetings.

On April 8, 2002, the Defendants submitted both grievances to the

Connecticut State Board of Mediation and Arbitration ("the

Board") for resolution.  The Board appointed alternate panel

members to conduct a hearing.  The parties mutually agreed that

the issue before the three-member panel was whether the
grievances were arbitrable.  The Plaintiff argued at the
arbitration hearing that the grievances were not arbitrable
because no Step 3 meeting had been held.  By a vote of two to
one, the panel ruled that the grievances were arbitrable.  The
Plaintiff filed this action, challenging the panel's decision on
arbitrability.

## II.  Legal Standard

In a motion for summary judgement, the burden is on the
moving party to establish that there are no genuine issues of
material fact in dispute and that it is entitled to judgment as a
matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir.
2000). The burden of showing that no genuine factual dispute
exists rests upon the moving party.  Carlton v. Mystic Transp.,
Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v.
Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223
(2d Cir. 1994)).  Once the moving party has met its burden, in
order to defeat the motion the nonmoving party must "set forth
specific facts showing that there is a genuine issue for trial,"
Anderson, 477 U.S. at 255, and present such evidence as would
allow a jury to find in his favor.  Graham v. Long Island R.R.,
230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all

4

ambiguities and draw all inferences in favor of the party against whom summary judgement is sought.  Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party."  Carlton, 202 F.3d at 134.  "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## III. Discussion

The question presented here is whether the grievance is arbitrable despite the fact that one of the steps in the grievance procedure was not followed.  Thus, this dispute is over a procedural issue.  "Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."  John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964).

The Plaintiff argues that the arbitration awards should be set aside because the arbitrators exceeded their authority.

> [T]he scope of authority of arbitrators generally
> depends   on   the   intention   of   the   parties   to   an
> arbitration,   and   is   determined   by   the   agreement   or
> submission.   Such   an   agreement   or   submission   serves   not

5

> only to define, but to circumscribe, the authority of arbitrators.  If it is clear that the arbitrator has exceeded his authority, the award cannot stand.

Local 1199, Drug, Hosp. and Health Care Employees Union, RWDSU, AFL-CIO v. Brooks Drug Co., 956 F.2d 22, 25 (2d Cir. 1992) (internal quotation marks and citations omitted).  However, a "high degree of deference" is afforded to arbitrators.  Wackenhut Corp. v. Amalgamated Local 515 and Int'l Union, United Plant Guard Workers of Am., 126 F.3d 29, 31 (2d Cir. 1997).  "The principal question for the reviewing court is whether the arbitrator's award draws its essence from the collective bargaining agreement, since the arbitrator is not free merely to dispense his own brand of industrial justice."  Id. (citation and internal quotation marks omitted).  "Under this standard, we have said that an arbitration award must be upheld when the arbitrator offer[s] even a barely colorable justification for the outcome reached."  Id. (citation and internal quotation marks omitted).  "The contractual theory of arbitration . . . requires a reviewing court to affirm an award it views as incorrect-even very incorrect-so long as the decision is plausibly grounded in the parties' agreement."  Id.

A review of the rulings of the Board shows that the awards "drew their essence" from the Collective Bargaining Agreement. The Plaintiff argued before the panel that the grievances were not arbitrable because there was no appeal of the Step 2 denial

of the grievance.  The Plaintiff contended that to appeal the
Step 2 denial, the Defendants had to request and attend a face-
to-face Step 3 meeting because such a meeting is a prerequisite
for submission of a matter to arbitration.  The Plaintiff also
argued that the Defendants' justification for not requesting or
attending a face-to-face Step 3 meeting did not excuse their
failure to follow all the steps of the grievance procedure.  The
Defendants argued before the panel that they appealed the
Plaintiff's Step 2 denial of the grievances and that their
failure to request and attend a face-to-face Step 3 meeting was
excusable in view of the ongoing disagreement between the parties
over how many representatives the Plaintiff was entitled to have
at Step 3 meetings.

The panel found that the Defendants had appealed the Step 2
denials of the grievances.  The panel concluded that the evidence
showed unequivocally that there had been an appeal because that
fact was clearly stated on the face of the grievance form
introduced into evidence at the arbitration hearing.  The Board's
ruling then states the following:

> Our second premise is that a fair reading of the
> language in the CBA fails to convince us that the same
> expressly mandates a face to face Third Step meeting as
> a prerequisite to submit a grievance to arbitration.
> Therefore, the Panel is not at liberty to impose or infer
> such a requirement and dismiss the grievance due to a
> failure to hold such a meeting. . . . Practically
> speaking, we discern that the primary purpose for holding
> a third step meeting would be to express Local 376's
> disagreement with the Step 2 denial and to indicate that

7

> they are appealing the same to arbitration.  That
> expression of disagreement, is what precludes a waiver of
> that right.

Plaintiff's Rule 56(a)(1) Statement (Doc. No. 12) Ex. B ("Johnson

Ruling") at 6 (footnotes omitted); Plaintiff's Rule 56(a)(1)

Statement (Doc. No. 12) Ex. C ("Teja Ruling") at 6 (footnotes

omitted).  The panel also noted that the Collective Bargaining

Agreement required the Defendants to "take up the matter with the

representative designated by" the Plaintiff and that in this case

that meeting would have been with the property manager, who was

the person who wrote the Step 2 decision.  Johnson Ruling at 6,

fn.8; Teja Ruling at 6, fn.8.

     The last sentence of Step 3 contemplates that the Plaintiff

will respond to the grievance within five working days "after the

meeting."  Thus, although the first sentence of Step 3 may not

expressly state the fact, Step 3 contemplates a meeting.

Nonetheless, the court concludes that the panel provided a

reasonable justification for the Board's ruling, one which more

than satisfied the requirement of at least a "barely colorable

justification."  Wackenhut Corp., 126 F.3d at 31.

     The panel correctly observed that the primary purpose for

holding a face-to-face Step 3 meeting, i.e., to express

disagreement with the Step 2 denial and put the employer on

notice that the matter would be taken to arbitration, had been

served in this case because the Defendants' expression of

disagreement was contained in joint exhibit 2, which was
introduced into evidence at the arbitration hearing, and this
document put the Plaintiff on notice of the disagreement.

At the time the panel reached its conclusion it had to
consider the fact that no Step 3 meeting had been held due to the
ongoing disagreement over how many representatives the Plaintiff
was entitled to have a Step 3 meeting and, thus, the Plaintiff
was in a position to thwart the ability of the Defendants to have
a Step 3 meeting and proceed to arbitration on a timely basis
notwithstanding the fact that Step 3 has specific deadlines of
five working days for holding the Step 3 meeting and for the
response thereafter by the Plaintiff.

The Board's ruling reflects the fact that the Step 2 answers
were dated March 20, 2002, and the panel took notice that each
case file reflected that the case was submitted to the Board on
April 8, 2002.  Thus, both of the five working day periods
provided for in Step 3 had run on the date the case was submitted
to the Board.

The Board's ruling in each case also noted in footnote 8
that "that meeting required Local 376 to meet with the Property
Manager. . . . In this case, the Property Manager was the one who
wrote the Step 2 decision."  Johnson Ruling at 6, fn.8; Teju
Ruling at 6, fn.8.  Thus, although the panel's conclusion to the
effect that the language requiring that the matter be "taken up

with" the representative of the Plaintiff did not require a
meeting appears to be incorrect, the arbitrators were correct in
noting that, in this case, the meeting that was required was a
meeting with the same individual who wrote the Step 2 decision.

Under these circumstances, the arbitrators' conclusion that
each case was arbitrable because in a case where the right to
arbitrate was not waived by the Defendants, where the Defendants
would never have been able to literally comply with the Step 3
procedure as written while the dispute over how many
representatives the Plaintiff was entitled to have at Step 3
meetings was ongoing, and where the Defendants had substantially
complied with and satisfied the purposes of the grievance
procedure, is plausibly grounded in the Collective Bargaining
Agreement.

The Plaintiff also argues that the awards should be vacated
because the panel acted in manifest disregard of the law.   "A
court will vacate an arbitral award on this ground only if 'a
reviewing court . . . find[s] both that (1) the arbitrators knew
of a governing legal principle yet refused to apply it or ignored
it altogether, and (2) the law ignored by the arbitrators was
well defined, explicit, and clearly applicable to the case.'"
Banco de Seguros del Estado v. Mutual Marine Office, Inc., 344
F.3d 255, 263 (2d Cir. 2003) (citing Greenberg v. Bear, Stearns &
Co., 220 F.3d 22, 28 (2d Cir. 2000)).   The Plaintiff argues that

10

the panel disregarded the legal principle that a contract must be
construed to effectuate the intent of the parties as expressed in
the language used so as to give reasonable effect to each of its
provisions.  The Plaintiff emphasizes that contractual terms are
to be given their ordinary meaning when the language is clear and
unambiguous.  However, the Plaintiff does not address in its
analysis the fact that under its proposed construction of the
requirements of the Collective Bargaining Agreement, the
Plaintiff could thwart the Defendants' ability to have any matter
arbitrated within the time frame that was clearly contemplated by
the parties at the time they entered into the Collective
Bargaining Agreement simply by refusing to resolve the ongoing
dispute over how many representatives it was entitled to have at
a Step 3 meeting, or by otherwise failing to make possible a Step
3 meeting.  The decision by the panel gives effect to the intent
of the parties, expressed in the language used by them in the
Collective Bargaining Agreement, that the Defendants not be
delayed in proceeding to arbitration beyond a certain time
period.  At the same time, the analysis in the Board's ruling
puts weight on the intent of the parties with respect to the
purpose to be served by the requirement that there be a Step 3
meeting and concludes that here the purpose to be served by the
requirement of the meeting had been served.  Thus, the court
finds unpersuasive the Plaintiff's argument that the panel acted

11

in manifest disregard of the law.

The Plaintiff also argues that the panel's award offends well-established public policy favoring freedom of contract and efficient resolution of disputes.  Here, the Plaintiff simply asks the court to substitute its interpretation of the contract for that of the arbitrators, which is not the role of the court.

**IV.  Conclusion**

For the reasons set forth above, the Defendants' Motion for Summary Judgment (Doc. No. 8) is hereby GRANTED, and Plaintiff's Motion for Summary Judgment (Doc. No. 11) is hereby DENIED.

Because the Plaintiff has filed a motion to stay the case which is being granted, the Clerk shall not enter a judgment in favor of the Defendants until September 25, 2006.

It is so ordered.

Dated this 1st day of September, 2006, at Hartford, Connecticut.

                                        /s/Alvin W. Thompson

                              _____
                                   Alvin W. Thompson
                                   United States District Judge